## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **NATHANIEL JEFFERSON**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15 C 2117 |
| | ) |
| **OFFICER GUERRERO** and **OFFICER MUSKAT**, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Nathaniel Jefferson ("Jefferson"), a pretrial detainee at the Cook County Department of Corrections ("County Jail"), brought this action under 42 U.S.C. § 1983 ("Section 1983") against Officers Pablo Guerrero ("Guerrero") and Geno Muskat ("Muskat") for failing to protect him from two other detainees. Now before this Court is defendants' Fed. R. Civ. P. ("Rule") 56 motion for summary judgment.

## Summary Judgment Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to the nonmovant (here Jefferson) and draw all reasonable inferences in his favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir.2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir.2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists, and

"must come forward with specific facts demonstrating that there is a genuine issue for trial" (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir.2008)). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Novmovants may oppose summary judgment by "citing to particular parts of materials in the record" (Rule 56(c)(1)(A)). But as Brown v. Advocate S. Suburban Hosp., 700 F.3d 1101, 1105 (7th Cir. 2012) has reconfirmed:

> Mere allegations in a complaint, however, are not "evidence" and do not establish a triable issue of fact.

Only when a plaintiff has verified his or her complaint may its allegations be considered on summary judgment -- and even then, only when the requirements of Rule 56(c)(4) as to personal knowledge, admissibility and competence are otherwise met (Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996)).

## Factual Background[1]

Jefferson is a pretrial detainee at the County Jail (J. St. ¶ 1; G. St. ¶¶ 1-2). During the relevant period he was housed in segregation in Division 9 tier 1 (G. St. ¶ 3). Jefferson's cellmate was Dontrell Watkins ("Watkins") (J. St. ¶ 2; G. St. ¶ 6). In the cell next to theirs were

---

[1] Where necessary, this opinion cites to the parties' memoranda as "Mem. --" or "Reply --" as appropriate, with identifying prefixes of "G." for Guerrero and Muskat and "J." for Jefferson. Both sides have submitted statements of fact pursuant to this District Court's LR 56.1, which is supposed to be an aid to identifying which issues of fact might be contested. More particularly, LR 56.1(a) calls on each Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each alleged fact. Then LR 56.1(b) requires the nonmovant to respond point by point, with citations to the record in support of (1) any claimed dispute as to the movant's version of the facts and (2) any additional facts that the nonmovant chooses to assert. In general this opinion will refer to the parties' LR 56.1 submissions rather than to the underlying record, with each party's statement of fact being cited "St. ¶ --" and its response to the other party's submission cited "R. St. ¶ --."

two other detainees, Martese Smith ("Smith") and Thaddeus Thompson ("Thompson") (G. St. ¶ 7). Detainees in segregation are allowed out of their cell for an hour each day (G. St. ¶ 4).

While Watkins and Smith were passing out dinner trays on February 16, 2015 they got into a fist fight for reasons Jefferson does not recall (G. St. ¶¶ 8-9). That fight stopped without the intervention of any correctional officers (G. St. ¶ 10). Once they had returned to their cells, Watkins, Smith and Thompson continued arguing while Guerrero was locking the doors (G. St. ¶¶ 11-12). Watkins was also arguing with Guerrero, who stated he had something on Watkins before telling Smith and Thompson "I got something for you all" and hurling racial slurs at Watkins (J. St. ¶ 10; G. St. ¶ 12, Ex. 1 at 27:19-28:8). Muskat was not present for those events (J. St. ¶ 13).

Both Guerrero and Muskat were working on Division 9 tier 1H the following day, February 17, on the 3 to 11 p.m. shift (G. St. ¶ 13). That night Jefferson and Watkins were let out of their shared cell and were escorted to the shower area by Guerrero and Muskat (G. St. ¶¶ 14, 15). As Jefferson was preparing to go into the shower, he saw Guerrero exchange Thompson's handcuffs for another pair (G. St. ¶ 16). When Jefferson got out of the shower his own handcuffs were put back on (G. St. ¶ 17).

While Jefferson was walking around talking to people through their doors, he heard an argument underneath the stairs between Watkins and Thompson -- both Smith and Thompson were also out of their cells in the dayroom (G. St. ¶¶ 17, 19). Guerrero was present for that argument as well (J. St. ¶ 9). But Guerrero had been given permission to leave at 10 p.m. that evening (he delayed taking his lunch break until his final hour of work) and was absent during the ensuing events (G. St. ¶ 27; J. St. Ex. D at 23:4-7).

At some point Smith and Thompson got out of their handcuffs (G. St. ¶ 21). Then the four of them -- Jefferson, Watkins, Smith and Thompson -- began fighting (G. St. ¶ 20).

After seeing the fight break out, Muskat called a "10-10" for an inmate fight over the radio (G. St. ¶ 23). Under the applicable regulations officers are not permitted to go into a dayroom when a fight is occurring until supervisors and back-up officers arrive (G. St. ¶ 24; see also J. St. ¶¶ 15-17). Once back-up officers and a sergeant did arrive, they went in and broke up the fight about five minutes after it began (G. St. ¶ 23, 25).

Video evidence shows that Muskat and other correctional officers outnumbered the combatants by 9:52:25 p.m. and that they had more than double their number by 9:52:42 p.m. (J. St. ¶¶ 18-19). That same video evidence shows correctional officers entering the dayroom about a minute later (J. St. Ex. H at 9:53:47), a little more than ten seconds after a sergeant had arrived at 9:53:36 (J. St. Ex. H).

Jefferson was struck multiple times in his face and head during the fight (J. St. ¶ 4). Afterward he was taken to the dispensary, examined by a nurse and given Advil and an antibiotic ointment (G. St. ¶ 29). Jefferson then returned to his cell (G. St. ¶ 30).

Jefferson thinks that the fight had to do with the argument between Watkins, Smith and Thompson rather than with any problem Smith or Thompson might have had with him personally (see J. St. ¶ 3; G. St. ¶ 32). Jefferson himself did not suspect that the fight was about to occur (G. St. ¶ 18), nor did he have problems with Smith or Thompson after that fight (G. St. ¶ 31).

## **Duty To Protect Jefferson**

As <u>Minix v. Canarecci</u>, 597 F.3d 824, 831 (7th Cir. 2010) teaches, "pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause"

that the Eighth Amendment guarantees to convicted persons. Thus both prison and jail officials must "take reasonable measures to guarantee the safety of inmates" (id. at 830).

On that score Gevas v. McLaughlin, 798 F.3d. 475, 480 (7th Cir. 2015) (internal quotation marks and citations omitted) has summarized the operative legal standards:

> A prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety. A claim that a prison official was deliberately indifferent to such a risk has both an objective and a subjective component. First, the harm to which the prisoner was exposed must be an objectively serious one. . . . [Second,] the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Although this inquiry focuses on an official's subjective knowledge, a prisoner need not present direct evidence of the official's state of mind: Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.

In most cases a prisoner's general, vague or stale concerns for his or her safety cannot support an inference of actual knowledge on the part of prison officials, but a communicated fear of a specific, credible and imminent attack can (id. at 480-81).

As for fights already begun, Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011) has reiterated that "correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety." And even possible negligence in deciding how best to intervene does not constitute deliberate indifference (Guzman v. Sheahan, 495 F.3d 852, 858-59 (7th Cir. 2007)).

Jefferson claims that the argument between Watkins and their neighbors Smith and Thompson on February 16 put Guerrero on notice of the substantial risk of serious harm to Jefferson of permitting all four of them out of their cells at the same time on February 17 (J. Mem. 6-7). More than that, the fact that Watkins had gotten into it with Guerrero the day

- 5 -

before the fight suggests a level of animosity that, Jefferson says, could explain Guerrero's deliberate indifference to that risk (id. at 7-8).

It is plain that what Guerrero allegedly knew about the animosity Smith and Thompson harbored for Watkins was not enough on its own to put him on notice that an attack was imminent: Indeed, Jefferson himself was aware of the same facts and was oblivious to the impending melee. So if Guerrero is to be held liable at all, it must be on Jefferson's theory that Guerrero had foreknowledge of the assault because he had arranged for it.

As a threshold matter, however, three instances adverted to by Jefferson's counsel in purported support for that proposition cannot be used to oppose defendants' present motion. In fact, the first two raise grave concerns about Jefferson's counsel's compliance with Rule 11.

First, it is a real distortion of Guerrero's deposition testimony for Jefferson's counsel to insinuate that his statement that his duties involve giving detainees "what they got coming" (J. Mem. 7 and J. St. ¶ 11, quoting J. St. Ex. D at 15:7-8) was an offhand admission that his job entails retaliatory beatings. Quite to the contrary, that language was lifted from Guerrero's response to a question about what he was trained to do as an officer inside a tier -- here is Guerrero's answer in full (J. St. Ex. D at 15:7-9):

> Let them out for their hours, give them what they got coming, a tray at their times, and that's it, secure.

Clearly it is only by taking Guerrero's statement totally out of context can it be read as discussing anything more sinister than deliveries.

Second, Jefferson cannot seriously maintain that there is a genuine issue of material fact as to who called in the "10-10" over the radio (see J. Mem. 3). Although G. St. ¶ 23 identifies Guerrero as the party responsible, the citation is actually to Muskat's deposition, and G. St. ¶ 27 -

- which Jefferson does not contest -- says that Guerrero had gone home for the evening. Defendants now confirm that the mention of Guerrero was due to a clerical error (G. Reply 2). Yet Jefferson attempts to treat G. St. ¶ 23 as an admission that it was Guerrero who had called a "10-10" over the radio (J. St. ¶ 5), even though the record clearly reflects that it was Muskat who did so (see J. St. ¶ 14). So no record evidence supports an assertion that it was Guerrero who reported an inmate fight. This Court will not permit counsel for Jefferson to manufacture an issue of material fact by playing "gotcha!" with opposing counsel's occasional sloppiness.

Third, Guerrero's supposed statement to Smith and Thompson on February 18 that "I'm glad yall took care of that for me" (J. Mem. 7, quoting J. St. Ex. E at 8:3) is only an allegation of the Complaint -- and as such it cannot be considered on summary judgment (see Brown, 700 F.3d at 1105). Jefferson's "certification" under the threat of court sanctions (J. St. Ex. E at 6) does not rise to the level of a verification under penalty of perjury, and so even had his Complaint otherwise complied with Rule 56(c)(4) it could not be treated as an affidavit under Ford, 90 F.3d at 246-47. Conversely, because Jefferson alleges only in the passive voice that "Guerrero was heard" expressing his gratitude, not that Jefferson himself heard that (J. St. Ex. E at 7-8), there is not the element of personal knowledge that Rule 56(c)(4) requires of affidavits and declarations.

But those deficiencies do not serve to save Guerrero from trial, for Jefferson has presented sufficient evidence from which a reasonable jury could perhaps infer that Guerrero knew about and even facilitated the attack. On the night of February 16 Guerrero made what could readily be viewed as a promise to let Smith and Thompson have their way with Watkins, toward whom Guerrero also held a grudge. Then on the day of the fight he was seen fiddling with the handcuffs of one of the two assailants who later managed to get out of their handcuffs.

And then it could reasonably be inferred that Guerrero left because he had arranged his lunch so that his shift would end at the exact moment when it would be useful for him not to be present at (and thus called to answer for) the start of a dangerously lopsided fight.

This Court will not weigh the evidence to determine the likelihood of a jury believing that account. But given that a jury might reasonably give it credit, it was also plainly foreseeable that Jefferson would get caught up in an assault on his cellmate in his presence and be left at a severe disadvantage against his unshackled assailants.

As for Muskat, however, Jefferson does not present any evidence that really impugns his actions, let alone supports a claim of deliberate indifference. Nothing suggests that Muskat knew the fight was about to take place. What Jefferson blames him for is his slow response. But far from evincing a depraved lack of concern for Jefferson's well being, that delay was the result of Muskat's following the County Jail's procedures, which require waiting for a sergeant before entering the dayroom to break up a four-man brawl.

Jefferson objects that there is no record evidence saying that those procedures were instituted for security reasons (J. R. St. ¶ 24), but no other inference is possible. At a minimum Jefferson offers no other reason for them. From the moment when Jefferson says correctional officers might have entered the dayroom (because they had bare numerical superiority -- but without, it should be noted, any supervisory assessment of the risks) to the time when they actually did enter, fewer than 90 seconds had elapsed. Jefferson argues that Muskat was nonetheless too cautious in not breaking from the County Jail's procedures, but if anything that is at most an argument for simple negligence.

**LR 56.1 Statements by Counsel for Jefferson**

So much for the issues central to this action. This opinion must now regrettably turn to the manner in which counsel for Jefferson opposed defendants' motion. All lawyers submitting papers to this Court -- including those with the admirable vocation of running a law school's pro bono clinic -- must undertake a reasonable investigation to ensure that those papers comply with Rule 11(b), an obligation that of course encompasses supervising the work of students or anyone else who contributes to those submissions.

In that regard this Court has been struck by the puerile attitude on display in Jefferson's treatment of the record. Counsel's distortion of Guerrero's statement about delivering items (mainly food trays) to detainees, and counsel's attempt to manufacture an issue of fact about whether it was Muskat who reported the assault, have already been discussed. Similarly, a disregard for the gravity of judicial proceedings seems to have motivated the pettiness of Jefferson's LR 56.1(b) response, which is concerned almost exclusively with matters on which nothing turns.[2] Many of the objections have nothing to do with whether this Court should accept a fact as uncontested for purposes of the present motion. Some are downright ludicrous.

Counsel's nitpicking is all the more striking given the spirit with which defendants' counsel prepared its LR 56.1(a) submission. For no one could miss that, in contrast to the conduct of most litigants, the Guerrero-Muskat statement of material facts as to which there is no dispute does not shy away from reciting inconvenient facts (e.g., G. St. ¶¶ 12, 16 and 21).

---

[2] One exception is J. R. St. ¶ 24, which does raise a substantive point -- but this opinion has already discussed the inappropriateness of asserting that the record does not indicate that the County Jail's procedures are motivated by security concerns, given Jefferson's inability to proffer any other plausible motivation.

Nonetheless, counsel for Jefferson cavils at G. St. ¶ 4 on the sole stated ground that only one of the two citations that defendants include actually supports it.  But that is to admit that defendants' statement has evidentiary support -- in this case, Jefferson's own testimony!  Jefferson's counsel again takes issue with defendants' sloppy citation practice in G. St. ¶ 14, where -- in addition to citing the entire deposition answer in which Jefferson affirms that statement -- defense counsel also refers the reader to only two of the three lines containing the open-ended question, inexplicably omitting the final two words in that question.  Counsel for Jefferson objects to deeming the content of Jefferson's answer uncontested unless the two omitted words are also admitted (J. R. St. ¶ 14).  That objection makes no sense -- there is no suggestion as to what effect the demanded admission would have.

In G. St. ¶ 19 defense counsel forgot to provide a citation for the fact that Jefferson heard a particular argument -- an innocuous fact that plainly appears in Jefferson's deposition, and from the denial of which Jefferson obtains no strategic or tactical benefit -- and so Jefferson's counsel objects.  What is more, counsel then has the temerity not to provide any supporting citation for the asserted facts that it counterposes to G. St. ¶¶ 28 and 31 -- "facts" that, so far as this Court can tell (and in sharp contrast to defense counsel's oversight), do not appear in the record at all.

As a further example, G. St. ¶ 10 draws an objection on the ground that it reflects a statement made by defense counsel and therefore should not be taken as something Jefferson said.  On the contrary, it was a question that defense counsel put to Jefferson, to which he responded "Yeah" (J. St. Ex. C at 26:4-6).

Another example:  In a case where the predictability of the fight is of central legal importance, Jefferson's counsel raises an unwarranted relevance objection to the fact that Jefferson himself did not predict it (J. R. St. ¶ 18).  As a fallback, counsel further objects to the

- 10 -

form of the question that elicited Jefferson's admission (id.). But aside from the fact that the objection appears not to have been preserved (see Rule 32(d)(3)(B)), counsel's claim that the question was confusing is also meritless. That question reads (J. St. Ex. C at 38:15-17):

> So at least at that point in time when you're walking around the day room, you have no idea that you are about to be assaulted?

Before closing, this opinion briefly notes less serious mistakes that attend three other LR 56.1(b) responses -- the discussion of which leaves Jefferson without a single well-considered objection to defendant's LR 56.1(a) submission. Counsel objects on Fed. R. Evid. ("Evid. Rule") 106 completeness grounds to G. St. ¶¶ 12 and 20, but that is cause for allowing supplementation (see LR 56.1(b)(3)(C)) rather than for knocking out supported statements in defendants' own LR 56.1(a) submission. Similarly premature is the Evid. Rule 403 objection to G. St. ¶ 2, which is more properly a subject for a motion in limine. Indeed, if a motion for summary judgment turns on evidence challenged under Evid. Rule 403 (or J. R. St. ¶ 18's relevance objection, for that matter), the exclusion of that evidence is by definition improper.

## **Conclusion**

Defendants' motion for summary judgment (Dkt. No. 46) is denied as to Guerrero but granted as to Muskat. This Court orders a status conference for 8:45 a.m. on September 12, 2016 to discuss further proceedings looking to the trial of the case. Given the Rule 11 concerns noted in this opinion, counsel should also be prepared to discuss whether a rule to show cause should issue.

_____
Milton I. Shadur
Date: September 1, 2016          Senior United States District Judge